UNION OIL COMPANY OF CALIFORNIA, a corporation, Plaintiff,

v.

The TUGBOAT SAN JACINTO and the BARGE OLIVER J. OLSON III, their engines, boilers, tackle, apparel and furniture; and Star & Crescent Towboat Company, a corporation, and Oliver J. Olson & Company, a corporation, Defendants.

STAR & CRESCENT TOWBOAT COMPANY, a corporation, and Oliver J. Olson & Company, a corporation, Cross-Plaintiffs,

v.

UNION OIL COMPANY OF CALIFORNIA, a corporation, and the TANKER SS SANTA MARIA, Cross-Defendants.

Civ. No. 68-1.

United States District Court
D. Oregon.

July 3, 1969.

Kenneth E. Roberts and Ben Lombard, Jr., Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for plaintiff and cross-defendants.

Erskine B. Wood, Wood, Wood, Tatum, Mosser & Brooke, Portland, Or., for defendants and cross-plaintiffs.

## OPINION

KILKENNY, District Judge:

This is an admiralty case involving the collision of the SS SANTA MARIA, bareboat chartered by plaintiff, with the Barge OLIVER J. OLSON III in tow of the Tugboat SAN JACINTO on the Columbia River in the area between Waterford light and Cooper Point, although the parties are in dispute as to which side of the channel. Plaintiff seeks to recover its damages resulting from the collision and defendants, owners of the Tugboat SAN JACINTO and the Barge OLIVER J. OLSON III, have cross-complained to recover their damages resulting from the collision.

The following facts have been agreed upon by the parties:

The Union Oil Company of California is a California corporation and was the bareboat charterer of the SS SANTA MARIA, a tanker of American registry.

Defendant Star & Crescent Towboat Company is a California corporation and is the owner and operator of the Tugboat SAN JACINTO and defendant Oliver J. Olson Company is a California corporation and is the owner of the Barge OLIVER J. OLSON III.

On or about December 24, 1967, at approximately 2030 hours, the SS SANTA MARIA, piloted by a Columbia River pilot, was proceeding upstream in the Columbia River (a narrow channel) in the area between Waterford light and Cooper Point and the Tug SAN JACINTO, with the Barge OLIVER J. OLSON III towed astern on a tow line was proceeding downstream in the same general area when the bow of the SS SANTA MARIA was in collision with the starboard side of the Barge OLIVER J.

OLSON III causing damage to both the bow of the SS SANTA MARIA and the starboard side of the Barge OLIVER J. OLSON III.

▇ Involved in this case are clear cut issues of fact. Commonsense and the overwhelming weight of the evidence supports the plaintiff's contentions and I have no difficulty in finding:

(1) At all times mentioned herein, the SS SANTA MARIA was on its own side of the Columbia River Channel.

(2) The collision of the SS SANTA MARIA with the Barge OLIVER J. OLSON III was solely the fault of the Tugboat SAN JACINTO and the Barge OLIVER J. OLSON III and those in charge of their navigation. Prior to the collision, the SS SANTA MARIA was proceeding upstream on her own side of the Columbia River Channel and downstream of the collision point, she made both a visual and a radar sighting of the Tug SAN JACINTO and its tow which then appeared to be on their own side of the Channel. The SS SANTA MARIA observed patchy fog conditions ahead and proceeded at half speed blowing her fog signal. Prior to the collision the SS SANTA MARIA lost visual contact with the tug though she herself was out of the fog. When the SS SANTA MARIA was approaching abeam of Light No. 70 and on the edge of the fog bank, she sighted the Tug SAN JACINTO headed across her bow. She immediately went full astern and blew both the danger signal and the astern signal. The Tug SAN JACINTO cleared her bow but the Barge OLIVER J. OLSON III struck her port bow and the force of the impact swung the bow to the starboard and it grounded on the Oregon shore on a heading of 090.

(3) The SAN JACINTO and the OLIVER J. OLSON III and those in charge of their navigation were at fault and negligent, proximately causing the grounding and damage, in the following particulars:

(a) In navigating the tug and barge at a speed which was unreasonable for the river and weather conditions of fog and mist then and there existing.

(b) In failing to maintain a sufficient lookout, both visually and by radar, in order to ascertain the presence and position and course of the SS SANTA MARIA.

(c) In acting hastily and without sufficient cause in pulling the tow across the channel when there was adequate clearance for the tug and barge to pass port to port.

(d) In failing to ascertain the risk of collision between the vessels and to sound a danger signal.

(e) In failing to sound fog signals when approaching and while passing through a fog bank.

(f) In failing to reduce speed, stop or reverse or otherwise take any evasive action to avoid crossing the bow of the SS SANTA MARIA.

(g) In turning directly across the channel into the path of the SS SANTA MARIA and thereby navigating on the wrong side of the channel.

(h) In failing to keep the tow under control and in allowing it to veer across the channel in the path of the SS SANTA MARIA and strike the bow of the SS SANTA MARIA.

(4) The faults and negligence of the SAN JACINTO and the Barge OLIVER J. OLSON III were major and fully account for the collision with the SS SANTA MARIA.

(5) Additionally, the collision was proximately caused by the sole fault and negligence of the Tug SAN JACINTO and the Barge OLIVER J. OLSON III and those in charge of their navigation in that they were in violation of the following Inland Rules, by which violation they were presumptively at fault:

(a) Inland Rule, Article 18, Rule III, 33 U.S.Code § 203, in failing to give a danger signal.

(b) Inland Rule, Article 15(2) (e), 33 U.S.Code § 191 in failing to sound any or adequate fog signals while proceeding towards, into and through a fog bank.

(c) Inland Rule, Article 16, 33 U.S. Code § 192 in proceeding at an unreasonable speed for the existing circumstances and conditions of fog and mist.

(d) Inland Rule, Article 29, 33 U.S. Code § 221, in failing to keep and maintain a proper lookout both visually and on radar to ascertain the true course of the SS SANTA MARIA.

I find that as a result of the aforesaid acts of fault and negligence on the part of the defendants, the SS SANTA MARIA sustained substantial damage to her hull, was laid up and Union Oil Company of California sustained damages.

■ Defendants and cross-plaintiffs have failed to establish fault on the part of the SS SANTA MARIA, and those in charge of her navigation, in any one or more of the particulars charged in their contentions and have failed to establish that any one or more of such alleged acts proximately contributed to the collision and resulting damage.

■ There is no doubt in my mind but that the SS SANTA MARIA "ascertained" the position of the Tug SAN JACINTO prior to and at the time of the Tug SAN JACINTO's fog signals. Consequently, the SS SANTA MARIA was justified in proceeding without stopping her engines. This "ascertainment" may be made by radar and is an adequate justification for failure to comply with the technical requirements that the engines be stopped. For that matter, it probably would be a lack of good judgment on the part of those in charge of the SS SANTA MARIA to stop their engines and lose their steerage way in this very narrow channel. United States v. The Motor Ship Hoyanger, 265 F.Supp. 730 (W.D.Wash.N.D.1967); Universal Ins. Co. v. THE COAST BANKER, 129 F.2d 395 (9th Cir. 1942). The decision in China Union Lines, Ltd. v. A. O. Andersen & Co., 364 F.2d 769 (5th Cir. 1966), is very persuasive on my decision on the facts in this case. Here, those in charge of the navigation of the SS SANTA MARIA had no reason to believe that the defendants would cut across the bow of their ship.

■ It is my view that any possible violation of Article 16 of the Inland Rules by the SS SANTA MARIA, or those in charge of her navigation, were technical in nature and were not a contributing cause of the collision. The law on this subject is clear. White Stack Towing Corp. v. Bethlehem Steel Co., 279 F.2d 419, 82 A.L.R.2d 757 (4th Cir. 1960); Universal Ins. Co. v. THE COAST BANKER, *supra*; China Union Lines, Ltd. v. A. O. Andersen & Co., *supra*. Defendants cannot shroud themselves with the rule of *in extremis*. They placed themselves in their dangerous position by failing to keep a proper lookout and other negligent acts as aforesaid. THE JAMES A. LAWRENCE, 117 F. 228 (2d Cir. 1902); ATLAS MARU-ELENE, 1961 A.M.C. 242 (D.C.Md. 1961).

The foregoing shall constitute my findings and conclusions on the issue of liability. I suggest that counsel for the respective parties arrange a conference in connection with plaintiff's damages. If there is no agreement, I shall fix a time for hearing on the issue of damages.